IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| REGINA SUTTON, M.D. | § |
| | § |
| vs. | §    CASE NO. 6:23-cv-00328-JDK-KNM |
| | § |
| THE PRUDENTIAL INSURANCE | § |
| COMPANY OF AMERICA | § |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF 29). The case is referred to the undersigned pursuant to 28 U.S.C. § 636(b). Having reviewed and considered the motion, response, and reply, the Court recommends that the motion be denied.

### Background

Plaintiff Regina Sutton, M.D., initiated this diversity jurisdiction lawsuit against Defendant The Prudential Insurance Company of America seeking disability insurance benefits and relief for Defendant's alleged wrongful conduct in response to her claim for benefits. Plaintiff filed a Second Amended Complaint (ECF 27) asserting state law claims for breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code.

*Amended Complaint*

Plaintiff states that she was employed as a general/trauma surgeon before 2013, earning approximately $252,725 for the year 2013. Plaintiff avers that she stopped working on September 2, 2013, the same date that she sustained injuries in a car accident.[1] Plaintiff explains that her injuries included a right C5 to C6 disc herniation that was treated with an anterior cervical

---
[1] Plaintiff's Second Amended Complaint, ECF 27, at *3.

discectomy/fusion surgery on October 4, 2013. In 2014 and 2015, she submits that post-traumatic low back pain with right lower extremity radicular pain required a steroid injection, a right L5 to S1 laminectomy, facetectomy and foraminotomy surgery, and an L5 to S1 microdiscectomy. She also states that she had a failed T11 to 12 eXtreme Lateral Interbody Fusion surgery due to "obliteration of the disc space by methyl methacrylate from the prior T12 vertebral body kyphoplasty surgical procedure."[2]

Plaintiff describes continued cervical pain resulting in a 2016 posterior C4 to C5 laminectomy/multilevel fusion. She also states that she underwent a T10 to L2 posterior interbody fusion with instrumentation in 2017 that included placement of a spinal rod to stabilize the T12 spine fracture. She continued to experience right-sided weakness and her surgeon, Dr. Raabe, opined that it may be secondary to sarcoidosis with underlying lymphadenopathy. Plaintiff asserts that a thoracic spinal CT scan in 2018 showed posttraumatic changes at T12 with multilevel postoperative fusion changes and a lumbar spine CT scan showed prior T12 fracture with kyphoplasty change and T10 to L2 posterior fusion with orthopedic hardware. Plaintiff alleges that she continued to suffer symptoms from these injuries and procedures throughout 2018 and 2019.[3]

In July 2019, Plaintiff states that she had a stroke requiring neurological treatment.[4] She submits that she suffered vertigo due to the stroke in 2019 and 2020, causing her to fall and break her wrist. She also asserts that she was diagnosed with kidney dysfunction in 2019. Plaintiff reports a laminoforaminotomy surgery at L4 to L5 and L5 to S1 on February 11, 2020.[5] As a result of her medical conditions, as well as the side effects of her prescribed medications, Plaintiff asserts

---

[2] *Id*.
[3] *Id*. at *4.
[4] *Id*.
[5] *Id*. at *5.

that she continues to suffer pain, discomfort, and functional limitations that impair her ability to maintain full-time employment.[6]

Plaintiff states that she submitted a claim with Defendant seeking long-term disability benefits under Policy A and Policy C, policies issued on November 1, 2008 as a result of her participation in the Texas Medical Association Insurance Trust.[7] Plaintiff alleges that Defendant approved the claim, finding that she was disabled from September 2, 2013 to September 1, 2017, and paid the appropriate disability insurance benefits. Plaintiff complains, however, that Defendant terminated her claim on October 17, 2017. According to Plaintiff, the disability definition at that time required a showing that she was unable to perform her "Own Occupation," or make at least 80% of her pre-disability earnings.[8] Plaintiff submits that she appealed the termination decision and Defendant reversed its termination decision on July 3, 2018, agreeing to extend her disability benefits "for the remainder of the 'Own Occupation' periods on Plan A until October 1, 2018, and on Plan C until February 28, 2019."[9] Plaintiff states that the letter included a finding that Plaintiff could perform other gainful occupations and gave her an opportunity to appeal that decision.

Plaintiff alleges that she submitted medical records and other evidence supporting her inability to work. She complains that Defendant requested earnings records for the period of January 1, 2013 to June 30, 2013, even though the information was previously submitted prior to approval of the claim, and requested tax returns for 2012 and 2013. Plaintiff submits that she no longer has those records, but Defendant repeatedly accused her of failing to send them.[10] Plaintiff states that Defendant denied her appeal on July 29, 2019, and she appealed that decision on January

---

[6] *Id.*
[7] *Id.* at *2, 6, and 24.
[8] *Id.*
[9] *Id.*
[10] *Id.* at *8.

9, 2020. Plaintiff asserts that the appeal included the requested financial documents, as well as additional medical records supporting her assertion that she is unable to work, but the appeal was denied on June 18, 2020.[11] Plaintiff then recites numerous appeals and claim decisions between June 18, 2020 and September 27, 2022, with the final exhaustion of administrative remedies occurring on September 27, 2022.[12] Plaintiff complains that Defendant relied on biased and unqualified medical record reviewers and discounted the opinions of her physicians and her documented functional limitations and impairments. She also asserts that Defendant improperly disregarded the disabling effects of her impairments, including her memory problems. Plaintiff submits that Defendant waited nine years to exercise its right to request a consultative examination, but at that point she was unavailable due to the severity of her condition.[13]

Plaintiff avers that Defendant breached its contractual duty under the policies by refusing to pay her long-term disability claim after January 18, 2022.[14] Plaintiff submits that this claim accrued, at the earliest, on January 18, 2022, "when [Defendant] reversed its prior denial and approved additional benefits though July 1, 2019."[15] Plaintiff additionally asserts that Defendant breached its duty of good faith and fair dealing by failing to complete an objective and thorough investigation, by failing to fairly evaluate her claim, and by improperly treating her claim as an ERISA claim.[16] Finally, Plaintiff alleges unfair claims settlement practices in violation of the Texas Insurance Code.[17]

---

[11] *Id.*
[12] *Id.* at *8–15.
[13] *Id.* at *17.
[14] *Id.* at *25.
[15] *Id.* at *26.
[16] *Id.* at *26–29.
[17] *Id.* at *29–34.

*Motion to Dismiss*

Defendant filed a Motion to Dismiss Plaintiff's Second Amended Complaint (ECF 29) seeking dismissal of all claims with prejudice. The motion includes six exhibits: (1) Declaration of Ronald Tyler; (2) Group Insurance Contract; (3) Texas Medical Association Insurance Trust Doctors – Option 1 Long Term Disability Coverage; (4) Declaration of Tamika S. Williams; (5) Group Disability Insurance Employee Statement; and (6) appeal decision letter dated August 22, 2022. Defendant asserts that Plaintiff has not stated a plausible breach of contract claim because she was not eligible for benefits, she breached the terms of the policy by refusing an in-person medical examination, and her claim is untimely pursuant to the policy's three-year limitations provision. Defendant submits that Plaintiff's extra-contractual claims also fail due to her failure to state a plausible claim for breach of contract showing coverage. Further, Defendant argues that the extra-contractual claims are untimely and do not allege a plausible claim for relief. To the extent Plaintiff asserts a Texas Insurance Code claim based on misrepresentations, Defendant submits that Plaintiff has not met the heightened pleading requirement. Finally, Defendant asserts that Plaintiff has not adequately pled a prompt payment claim.

Defendant argues that Plaintiff cannot state a plausible breach of contract claim because coverage ended before her claim arose. Defendant explains that Plaintiff was never eligible for benefits because she stopped working full-time two months prior to becoming disabled.[18] Defendant submits that Plaintiff states in her initial claim for benefits that she stopped working on June 30, 2013 due to her son's illness.[19] Defendant argues that the claim form is proper for consideration with the motion to dismiss because it is referenced in her pleadings and the Court

---

[18] Defendant The Prudential Insurance Company of America's Motion to Dismiss Plaintiff's Second Amended Complaint, ECF 29, at *9.
[19] *Id*.

should not take as true the statement in the Second Amended Complaint that she stopped working on September 2, 2013.[20]

Next, Defendant contends that Plaintiff violated the terms of the policy when she refused to attend an in-person medical examination. Defendant submits that the express terms of the policy provide that payments will end on the date the claimant refuses to be examined by doctors, other medical practitioners, or vocational experts of their choosing.[21] Defendant asserts that it requested an independent medical evaluation on February 17, 2022, but Plaintiff refused to attend.

The third ground for seeking dismissal of the breach of contract claim is that the policy expressly requires any legal action to be brought within three years. Defendant asserts that Plaintiff's claim accrued, at the latest, on July 3, 2018 "when [Defendant] terminated LTD benefits at the end of the Policy's 'own occupation' period, finding that Plaintiff was able to perform other 'gainful occupations.' "[22] Even taking into consideration potential tolling during Plaintiff's second appeal, Defendant argues that only 161 days would be added to the deadline for filing suit. Defendant denies that the January 2022 extension of benefits altered the breach of contract claim accrual date.

Like the breach of contract claim, Defendant asserts that Plaintiff's extra-contractual claims are time-barred because of the applicable two-year statute of limitations. Defendant submits that accrual began on July 3, 2018 when Plaintiff was notified that benefits were being terminated. According to Defendant, suit had to be filed on these claims no later than July 3, 2020, but it was not filed until July 3, 2023.[23]

---

[20] *Id*.
[21] *Id*. at *11.
[22] *Id*. at *12.
[23] *Id*. at *18.

6

Defendant also asserts that Plaintiff has not alleged facts establishing a breach of the duty of good faith and fair dealing or unfair settlement practices. Defendant contends that the pleadings do not allege sufficient facts to support a claim that Defendant's conduct was unreasonable, as opposed to a bona fide coverage dispute. Defendant characterizes Plaintiff's allegations as evidencing a disagreement with Defendant's medical file reviewers and Defendant's ultimate decision to terminate benefits.[24]

Defendant submits that Plaintiff's claims for alleged misrepresentations in violation of the Texas Insurance Code do not meet the heightened pleading requirements of FED. R. CIV. P. 9(b). Defendant complains that these allegations lack information concerning the time, place and contents of the alleged misrepresentations, as well as the identity of the people making the misrepresentations. Similarly, Defendant argues that Plaintiff does not allege sufficient facts concerning time constraints and deadlines that would support a prompt payment claim or identify which provision was allegedly violated.

## Applicable Law

When considering a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010); *Ballard v. Wall*, 413 F.3d 510, 514 (5th Cir. 2005). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Motions to dismiss are "viewed with disfavor and rarely granted." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include facts that "raise a right to relief above the speculative level," and into the "realm of plausible liability." *Bell Atlantic*

---

[24] *Id.* at *21.

*Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 1965–66 n. 5 (2007). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although detailed factual allegations are not necessary, a "plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964–65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)). "[W]here well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

## Discussion and Analysis

A. *Plaintiff's Objection to Attached Documents*

In response to the motion to dismiss, Plaintiff objects to the inclusion of documents outside of the pleadings. Specifically, Plaintiff objects to the group contract, the option for long-term disability coverage, and Plaintiff's claim form. Plaintiff disputes that the group contract and option provided are the controlling contracts and asserts that they are hearsay. Plaintiff additionally contends that the option is unauthenticated. Plaintiff objects to inclusion of the claim form as irrelevant and argues that it is not incorporated by reference in the Second Amended Complaint.

Typically, a Rule 12(b)(6) motion cannot rely on evidence outside of the complaint. *C&C Inv. Props., L.L.C. v. Trustmark Nat'l Bank*, 838 F.3d 655, 660 (5th Cir. 2016). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(b)(d). A court is not required to convert the motion to dismiss to a motion for summary judgment, however, "if that evidence is either (a)

a document attached to the Rule 12(b)(6) motion, referred to in the complaint, and central to the plaintiff's claim; or (b) a matter subject to judicial notice under Federal Rule of Evidence 201." *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (citing *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). If a document is referred to in the complaint, for example, attachment of the document may "merely assist[] the plaintiff in establishing the basis of the suit." *Collins v. Morgan Stanely Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). It is within the Court's discretion to determine whether the evidence should be accepted or excluded. *General Retail Services, Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed.Appx. 775, 783 (5th Cir. 2007) (citing *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 (5th Cir. 1988)).

Defendant submits that the group contract and the option for long-term disability coverage are referred to in the second amended complaint and are central to Plaintiff's claims. Insurance contracts, not attached to a complaint, but referred to and central to a plaintiff's claims, may be considered when assessing a motion to dismiss. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). Here, Plaintiff disputes that the contract and option submitted by Defendant are the controlling contracts. Plaintiff contends that the group contract differs from one previously produced and the option is not signed and does not provide an effective date of coverage. Consideration of such attachments to a motion to dismiss is only appropriate when the attachments are merely assisting the plaintiff in establishing the basis of the suit. *Collins*, 224 F.3d at 498–99. The documents should be uncontested if they are to be considered in a motion to dismiss. *See Transportation Management Services, Inc., v. Hiscox Insurance Company, Inc.*, 716 F.Supp.3d 486, 491 (W.D.Tex. Feb. 12, 2024), *reversed on other grounds*, 2025 WL 33479 (5th Cir. 2025). While Defendant contends that the documents are authenticated and that there has been no showing concerning whether an option would include a signature or effective date, those arguments require an evidentiary finding for resolution. It is not appropriate to subject Plaintiff's

9

pleadings to a rigorous factual or evidentiary analysis in response to a motion to dismiss. *Mendoza v. Dejoy*, 2024 WL 2031701, at *3 (W.D.Tex. May 7, 2024). The issue is whether Plaintiff has pleaded enough facts to state a plausible claim. *Bell Atl. Corp. v. Twombley*, 550 U.S. at 570. Because it is contested whether these are the controlling contracts referred to in the second amended complaint and central to Plaintiff's claims, they are excluded from consideration on the motion to dismiss.

Similarly, Plaintiff objects to the inclusion of her claim form with the motion to dismiss. Defendant seeks to use the claim form to contradict Plaintiff's factual assertion in the second amended complaint concerning the date she stopped working. While the claim form would have been part of the claim adjudication process, the claim form does not provide the basis for the lawsuit, such that it would be central to her claims. *See Collins*, 224 F.3d at 499. Defendant is improperly seeking consideration of the claim form to discredit facts asserted in the complaint and achieve a decision on the merits of Plaintiff's breach of contract claim. As such, it is excluded.

B. *Breach of Contract*

Defendant submits that Plaintiff's breach of contract claim should be dismissed for three reasons: (1) she cannot state a plausible claim for coverage because the initial claim form shows that stopped working prior to the alleged date of disability; (2) she refused an in-person medical examination; and (3) suit was not filed within three years. As stated, the claim form is excluded from consideration. The second amended complaint sufficiently alleges that she stopped working on September 2, 2013, when she sustained injuries in a car accident.[25] Similarly, the second ground goes beyond the pleadings and improperly seeks a factual determination concerning whether Plaintiff complied with the terms of the contract. The complaint alleges an inability to

---

[25] Plaintiff's Second Amended Complaint, ECF 27, at *3.

complete a consultative examination when it was requested.[26] Finally, the third ground concerns the timeliness of the lawsuit. Relying on policy language found in the policy document submitted with the motion to dismiss, Defendant argues that Plaintiff's claims accrued, at the latest, on July 3, 2018, and suit had to be filed within three years pursuant to the terms of the policy. As stated, the policy is excluded from consideration. These matters can appropriately be determined on summary judgment with the presentation of competent summary judgment evidence. At this stage, Plaintiff has sufficiently put forth factual allegations that state a breach of contract claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. at 678.

### C. Extra-Contractual Claims

Defendant submits that Plaintiff's extra-contractual claims should be dismissed as time-barred due to the applicable two-year statute of limitations. Plaintiff does not dispute that there is a two-year statute of limitations. Instead, Plaintiff disputes when her claims accrued. Defendant argues that the claims accrued on July 3, 2018, when Defendant allegedly notified Plaintiff benefits were being terminated. The second amended complaint describes that letter as a reversal of an earlier termination decision and an extension of her benefits.[27] "For the purposes of application of statute of limitations, a cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy." *Trevino v. State Farm Lloyds*, 207 Fed.Appx. 422, 424 (5th Cir. 2006) (quoting *Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507, 514 (Tex. 1998)). Resolving the issue of whether these claims are time-barred requires the consideration of evidence beyond the complaint on a motion for summary judgment.

Next, Defendant argues that Plaintiff failed to allege sufficient facts to state claims for breach of the duty of good faith and fair dealing and violations of the Texas Insurance Code.

---

[26] *Id*. at *17.
[27] *Id*. at *6.

Defendant again relies on the excluded documents submitted with its motion to dismiss to assert that it acted reasonably and in good faith. Additionally, Defendant submits that Plaintiff's allegations amount to no more than a disagreement with its conclusions and ultimate decision to terminate benefits. In Texas, an insurer breaches its duty of good faith and fair dealing "when it lacks a reasonable basis for denying or delaying payment of the claim or when it should have known that no such basis existed." *Thrash v. State Farm Fire & Cas. Co.*, 992 F.2d 1354, 1358 (5th Cir. 1993). Here, Plaintiff's pleadings go well beyond merely asserting conclusory allegations that Defendant lacked a reasonable basis for denying her claim. Plaintiff provides extensive details concerning the handling of her claim, including issues with Defendant allegedly failing to acknowledge receipt of records, delays in obtaining records, delay in requesting a consultative examination, delays in deciding her claim, and alleged misrepresentations. Whether Plaintiff can ultimately prove these claims is an issue for another day. At the pleading stage, Plaintiff met her burden of alleging sufficient facts to state a plausible claim for relief.

Finally, Defendant asserts that Plaintiff has not met the heightened pleading requirement to state a misrepresentation claim in violation of the Texas Insurance Code. Where the "gravamen of the claim is fraud even though the theory supporting the claim is not technically fraud," the Rule 9(b) heightened pleading standard is required. *Berry v. Indianapolis Life Ins. Co.*, 608 F.Supp.2d 785, 800 (N.D.Tex. March 11, 2009). The Rule 9(b) heightened standard applies to misrepresentation claims brought for violations of the Texas Insurance Code and requires allegations of fraudulent misrepresentations and omissions. *Id*. Allegations of fraud require stating "with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). As stated, the Second Amended Complaint goes beyond providing conclusory statements and includes specific allegations of misrepresentations. Plaintiff's Second Amended Complaint, ECF 27, at *31–34.

## Conclusion

Accepting all well-pleaded facts as true, Plaintiff's pleading sufficiently alleges facts to support the asserted claims for relief. For these reasons, the motion to dismiss should be denied.

## **RECOMMENDATION**

It is accordingly recommended that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF 29) be **DENIED.**

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b). Written objections shall not exceed eight pages. Local Rule CV-72(c).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 4th day of March, 2025.

*[signature]*
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE